## 33289.   CARTER *v.* RICH'S INC.

Decided January 27, 1951.

*Frank E. Blankenship,* for plaintiff in error.

*Parker & Parker,* contra.

SUTTON, C. J. Rich's Inc. foreclosed, in the City Court of Decatur, a contract retaining title to personal property to secure a debt of $556.38. The contract was dated December 7, 1949, and recited that Carter had on that day purchased from Rich's Inc. twelve described items of household furniture. The price of the twelve items aggregated $552.34; the cash payment of $52.36 was subtracted from this sum, leaving a balance of $499.98, and carrying charges of $56.40 for 24 months were added to this balance, making the amount sworn to be due, $556.38. This amount was payable "upon the following terms: $52.36 cash and balance at (23) 21.93 (1) 22.01, per month." Title to the property listed was to remain in Rich's Inc. until the full price was paid. If not paid within 90 days, Carter agreed to "pay a carrying charge at the rate of one-half of one percent per month from the date of the purchase until paid." If default were made in any payment, Rich's Inc. had the right at its option to declare the entire amount due. Carter signed this paper.

The foreclosure affidavit with the copy of the contract attached was filed on January 13, 1950; a fi. fa. was issued thereon returnable on the third Monday in March, and levy was made upon the articles described in the contract on January 14, 1950.

On March 6, 1950, Carter filed an affidavit of illegality to the foreclosure, which, as later amended, alleged: that the contract upon which the plaintiff based its foreclosure was not at that time in existence, since a new contract had been executed bearing the same date as the former one, December 7, 1949, and the new contract was accepted by the plaintiff on March 4, 1950, at which time the defendant Carter paid $2.98 in addition to the down payment already made, which sum was accepted by the plaintiff; that the new contract covered the same property and the same consideration as set forth in the original contract upon which the foreclosure was based; and that a copy of the new contract was attached. The alleged new contract recited the sale to Carter of the same twelve articles, listed at the same prices, and it reflected the same cash payment of

190

$52.36, and also $2.98 "to be paid", leaving a balance of $497. A carrying charge of $59.64 was added to this balance, making a total price of $556.64. This was payable "upon the following terms: $52.36 cash and balance at (23) $23.19 (1) $23.27, per month." All other provisions were identical with those of the contract foreclosed.

The second ground of the affidavit was to the effect that the amount shown in the plaintiff's affidavit was not due and was not unpaid, that there had been no demand for payment, and that the plaintiff's affidavit was untrue.

The third ground of the illegality consisted of allegations that the defendant was and had been ready, willing, and able to pay the first and subsequent instalments of the price as they fell due, but no further particulars to establish a tender were alleged.

To this affidavit of illegality, the plaintiff filed demurrers which raised the question of whether the affidavit of illegality set forth sufficient facts to show that the foreclosure was proceeding illegally. The general demurrers were sustained, and to this ruling the defendant excepted.

▆▆▆ The rulings made in the corresponding divisions of the headnotes require no further elaboration.

▆▆ Since the trial judge ruled only on the general demurrers filed by the plaintiff, this court must determine whether the affidavit of illegality contains any averments constituting in substance a good defense against the foreclosure proceeding. The grounds consisting of a plea of tender and a general denial are insufficient. Did the alleged new contract set up in the illegality discharge the obligation of the defendant under the first contract? We think not.

Both writings purport to be memoranda of the same transaction, both are dated as of December 7, 1949, and the provisions for the monthly payments thereafter are the same. Although the charges for the individual articles listed are the same in each writing, the writing foreclosed contains some inconsistencies which do not appear in the later writing. In the first writing, the carrying charge for 24 months of $56.40 is $3.60 less than ½ of 1% per month on the $499.98 balance left after credit of the down payment. This was an error, as this carry-

ing charge should have been $60. The price established for the goods when deferred payments are to be made is expressed first as $556.38, while the sum of the 24 monthly payments amounts to only $526.40. In the later writing, these inconsistencies are removed. The down payment is increased by $2.98. The carrying charge is increased by $3.24 to $59.64, which is exactly ½ of 1% per month for 24 months on the balance after credit of the increased down payment. The total cost of the articles purchased, as evidenced by the two writings or contracts, is the same. After default in the first monthly payment, the entire amount was declared to be due as provided by the contract, and the foreclosure proceeding was for the total amount of the indebtedness.

It was not denied in the affidavit of illegality that there was a default in making the first monthly payment. The plea of tender admitted that the first payment fell due in January, 1950, but did not show that a payment or tender was made of the first instalment of the price one month from the date of the sale or a reasonable time thereafter; and the plaintiff, by filing the foreclosure affidavit, made a timely exercise of its acceleration privilege, thereby declaring the entire amount due. The defendant does not challenge the debt of $556.38, sworn to be due, by showing that this was not the correct amount. The duty of the plaintiff under the contract foreclosed was to deliver the goods specified therein to the defendant, and this had been done.

"One simple contract as to the same matter, and on no new consideration, does not destroy another between the same parties." Code, § 20-115. There was no new consideration supporting the new contract in this case. In *Motor Contract Div. Trusco Finance Co.* v. *Southern Cotton Oil Co.*, 76 *Ga. App.* 199 (45 S. E. 2d, 291), and in *Georgia National Bank* v. *Fry*, 32 *Ga. App.* 695 (124 S. E. 542), it is held that new notes given for an existing indebtedness, although providing for additional interest and, in the former case, additional carrying charges, did not operate to extinguish the indebtedness on the original notes, in the absence of an express agreement that they should so operate. *Davis & Co.* v. *Morgan*, 117 *Ga.* 504 (43 S. E. 732), and *Willingham Sash & Door Co.* v. *Drew*, 117 *Ga.* 850 (45 S. E. 237), both hold that an agreement to pay more money for the

same performance required by a prior contract between the same parties is a nudum pactum.

In the present case, the defendant sets up an alleged new contract, in which the only material difference from the former one as it stood after the filing of the foreclosure is an increase of $3.24 in the carrying charges, offset by the defendant's payment of $2.98, leaving a balance due of $556.64, 26 cents greater than the amount sworn to be due under the contract foreclosed. Nothing in this second writing shows an intent of the plaintiff to revoke its previous declaration that the whole balance was due or to extend the time for payment. By placing the same dates on both writings, the parties have negatived such intent. Such promises cannot be implied in the face of what the parties have expressed. Under the rulings mentioned above, there was not a new consideration sufficient to support a new contract which would extinguish the indebtedness existing under the contract foreclosed.

The cases cited by the defendant are not contrary to this holding. To discharge an existing contract, the subsequent, inconsistent agreement covering the same subject-matter must be a *valid* contract, and not a nudum pactum. *Hewlett* v. *Almand*, 25 *Ga. App.* 346 (103 S. E. 173); *American Sewer Pipe Co.* v. *Mathews*, 19 *Ga. App.* 248 (91 S. E. 284); *Avary* v. *Avary*, 202 *Ga.* 22, 34 (41 S. E. 2d, 314). Examination of these cases reveals that in each of them the new contract was entered into prior to the breach of the first contract, and prior to complete performance of the original contract by either of the parties to it. In the present case, the plaintiff had fully performed his obligations under the contract, and the defendant was in default, at the time the alleged new contract was entered into.

■ It was not error for the trial judge to strike the affidavit of illegality, since it was wholly insufficient as a defense to the foreclosure of a contract retaining title to personal property.

Pursuant to the act of the General Assembly, approved March 8, 1945 (Ga. L. 1945, p. 232, Code (Ann. Supp.) § 24-3501), requiring that the full court consider any case in which one of the judges of a division may dissent, this case was considered and decided by the court as a whole.

*Judgment affirmed.   MacIntyre, P.J., Gardner, Townsend and Worrill, JJ., concur.   Felton, J., dissents.*

FELTON, J., dissenting.   I am of the opinion that the alleged new contract was by necessary implication a mutual rescission of the first, for the reason that a vendor cannot sell the same goods to a purchaser a second time by a conditional-sale contract without reacquiring the absolute title thereto.   A mutual agreement to rescind may be implied.   17 C.J.S. 880, § 388.   A reasonable intendment under the second contract must be attributed to the parties, and unless we attribute to them the intention of rescinding the first contract and substituting a new one on the same kind of consideration involved in the first, we attribute to them the intention of doing an impossible thing. Even if there was no mutual rescission of the first contract, the second contract superseded the first completely because there was new consideration in the payment of $2.98 additional down payment and a promise to pay $3.24 additional carrying charges and an extension of time to the purchaser.   If the second contract was as a matter of fact accepted by the seller, it simply could not proceed with its foreclosure when it had by a valid contract annihilated the contract which it had foreclosed.