A05A1431. FAGBEMI et al. v. JDN REALTY CORPORATION.
(621 SE2d 765)

BLACKBURN, Presiding Judge.

Samuel and Sylvia Fagbemi (Fagbemi) appeal the trial court's January 18, 2005 grant of summary judgment to plaintiff JDN Realty Corporation (JDN) in its suit against Fagbemi and Oluyemisi Afuape (Afuape), for unpaid rent on a commercial lease.

Afuape failed to answer the complaint, and default judgment was rendered against him on September 10, 2004, and corrected on September 28, 2004. The trial court awarded JDN liquidated damages in the principal sum of $19,692.23, attorney fees of $1,434.47, postjudgment interest at the lawful rate, and costs of court. Afuape did not appeal this ruling.

Acting pro se, Fagbemi answered the complaint, but failed to file a response to JDN's motion for summary judgment. The trial court granted JDN's unanswered motion for summary judgment on January 18, 2005, and awarded JDN "judgment against Defendants Samuel Fagbemi and Sylvia Fagbemi, jointly and severally, with Oluyemisi Afuape." Based on JDN's affidavit and relevant documents, the court awarded damages "in the principal amount of $29,487.99 in past and future rents and charges from August 1, 2001 to July 31, 2004, attorney's fees of $2,973.80, plus court costs and interest at the lawful rate."

The trial court accepted JDN's undisputed argument that, as the original lease was for a three-year term, each subsequent assignment of such lease resulted in a new three-year lease term without any specific agreement to do so in the assignment. We disagree. Fagbemi, on the other hand, argues that their assignment of the lease to Afuape, with the approval of JDN, released them from any liability for future rents under the lease. We also disagree with this contention.

Fagbemi further contends on appeal that the evidence did not support the award of damages in the summary judgment ruling. We agree. The trial court properly found that Fagbemi and Afuape were liable to JDN for damages under the lease; the evidence, however,

does not support JDN's representations as to the amount of the damages awarded or the term for which each of the parties is liable to JDN. Under the default judgment granted against Afuape, the trial court included billings for attorney fees, which, in part, duplicate the billings which supported the award of attorney fees in the summary judgment action against Fagbemi and Afuape. It appears also that all of the damages awarded against Afuape in the default judgment are duplicated in the award of damages in the summary judgment against Fagbemi and Afuape. For these reasons, we vacate the default judgment against Afuape. We affirm the trial court's finding of liability of Fagbemi and Afuape in the grant of summary judgment, but vacate the damages awarded therein and remand the case to the trial court for a recalculation of the damages award, consistent with this opinion.

JDN complained that both Fagbemi, as a subsequent assignor, and Afuape, as their assignee were jointly and severally liable for certain unpaid rent, attorney fees, and costs, based on a lease which originated in 1994, to which neither Fagbemi nor Afuape were original parties, but rather, their interest arose from being in the chain of subsequent assignments. In granting summary judgment, the trial court adopted the factual representations of JDN, as contained in the affidavit of Eric C. Cotton, Assistant General Counsel for JDN. In paragraph 9 thereof, Cotton avers that "[t]he [l]ease was assigned multiple times between 1994 and 2001." In granting summary judgment, the trial court correctly accepted JDN's argument that neither the lease language nor the assignment relieved defendants of liability for rent under the lease.

Whether Fagbemi's assignment of the lease to Afuape, with the consent of JDN, releases Fagbemi from liability for future rent is controlled by the plain language of the assignment agreement.

> On appeal, this Court considers questions of law de novo. The construction of the provisions of a lease, as with other written contracts, is generally a matter of law for the trial court to determine. Absent ambiguity that the trial court cannot resolve using the statutory rules for contract construction, it remains the duty of the trial court to look to the language of the contract with a view to effectuating the intent of the parties.

(Citations and punctuation omitted.) *Roswell Festival, LLLP v. Athens Intl.*[1]

---

[1] *Roswell Festival, LLLP v. Athens Intl.*, 259 Ga. App. 445, 447 (1) (576 SE2d 908) (2003).

A review of the documents reveals that neither the lease nor the assignment is ambiguous. The lease states that "[t]he covenant of Tenant to pay all rents hereunder is and shall be deemed a *separate and independent covenant* and Tenant shall have no right of deduction or set-off whatsoever." (Emphasis supplied.) It further reads that "[t]he terms, provisions and covenants contained in this lease shall apply to, inure to the benefit of, and be binding upon the parties hereto *and* their respective . . . assigns." (Emphasis supplied.) Thus, Fagbemi, as assignees and assignors, were obligated to pay the rents due under the lease. The assignment, while stating that JDN Realty "hereby consents to the foregoing assignment of the [l]ease to Assignee and hereby recognizes Assignee's interest in the [l]ease and its rights thereunder," is silent on the matter of relieving Fagbemi of liability, and therefore adds no ambiguity to the otherwise clear language of the lease.

We further note that, unless there exists evidence of intent for an assignment to act as a novation, an original tenant is not normally released from liability when a lease is assigned. *Southland Investment Corp. v. McIntosh.*[2] See also *Sprayberry Crossing Partnership v. Tuley.*[3] Obtaining the consent of the landlord, as was done here, does not vary this rule. *Southland Investment Corp.*, supra. Neither does the fact that JDN Realty dealt exclusively with the assignee after the assignment. *Crow v. Cook.*[4] Thus, Fagbemi's contention that they were released from future liability under the lease by the consent of JDN to its assignment is without merit.

In its order granting summary judgment, the trial court noted that Fagbemi did not file a response to the motion and made no request for oral argument and the court had ruled on brief. The trial court stated in its order that JDN had submitted the Cotton affidavit, with attachments, in which Cotton averred that "[b]eginning in March 2003, Defendants defaulted as to the timely payment of monthly rent [and] Defendants owe Plaintiff JDN $29,487.99 in past and future rents and charges from August 1, 2001 to July 31, 2004 [and t]he lease also provides for attorney's fees." The trial court accepted JDN's representations and incorporated such in granting the motion for summary judgment.

"On appeal from the grant of summary judgment this Court conducts a de novo review of the evidence to determine whether there is a genuine issue of material fact and whether the undisputed facts,

---

[2] *Southland Investment Corp. v. McIntosh*, 137 Ga. App. 216, 218-222 (2) (223 SE2d 257) (1976) (physical precedent only).
[3] *Sprayberry Crossing Partnership v. Tuley*, 198 Ga. App. 53, 56-57 (2) (400 SE2d 334) (1990).
[4] *Crow v. Cook*, 215 Ga. App. 558, 562 (1) (b) (451 SE2d 467) (1994).

viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law." *Youngblood v. Gwinnett Rockdale Newton Community Svc. Bd.*[5]

So viewed, the history of the property shows that on October 3, 1994, JDN, as landlord of the subject property, leased it to Richard A. and Judith Skinner, for use as a store, under the subject lease (Skinner lease). The term of the lease was three years, from the commencement date in 1994, through the anniversary thereof in 1997, at which time it would have expired, if not renewed. "The [l]ease provides a term of lease of three years." The Skinner lease specifically provides for the lease term as "commencing with the date of this lease and terminating three years after the Rental Commencement date."

The Skinner lease further provides that

> if Tenant remains in possession of the Premises after the termination of this lease and without the execution of a new lease, Tenant shall be deemed to be occupying the Premises as a tenant at sufferance at a rent equal to the rent (including any Percentage Rent) herein provided plus fifty (50%) percent of such amount and otherwise subject to all the covenants and provisions of this lease insofar as the same are applicable to a tenant at sufferance and *in no event shall there be any renewal of this lease by operation of law.*

(Emphasis supplied.) It is clear that the parties intended that the lease could not be renewed or extended without a written agreement providing for such, executed by the parties. It is equally clear from the language of the lease that JDN intended to be able to obtain a 50 percent increase in rental payments from any tenant who failed to renew the lease in writing and remained in the property following the expiration of the lease.[6]

1. We now review the chain of assignments and renewals contained in the attachments to the Cotton affidavit, to determine the status of the lease at the time of the assignment from Fagbemi to Afuape. We note that neither party has done this review either in the trial court or on appeal, which fact resulted in the inaccurate representations to the trial court and its erroneous ruling on damages.

---

[5] *Youngblood v. Gwinnett Rockdale Newton Community Svc. Bd.*, 273 Ga. 715, 717-718 (4) (545 SE2d 875) (2001).

[6] We do not address the enforceability of this provision under Georgia law.

The record, as reflected in the attachments to the Cotton affidavit, shows that the Skinner lease was assigned to Manoj T. Patel on November 30, 1996, with the consent of JDN. While this assignment contains no renewal or extension of the lease, Patel and JDN did then renew the lease on February 12, 1998, for three years, covering the period March 1, 1998, through February 28, 2001, and amended the rental rate. The extended lease as of this time was set to expire on February 28, 2001.

The attachments to the Cotton affidavit establish that Patel then assigned the lease to Anwar Ali on August 30, 1999, effective September 1, 1999, with the consent of JDN. At this time, the lease was set to expire on February 28, 2001. Item IV of the assignment agreement grants an option to assignee Ali to extend the lease for one successive three-year lease term. This option clearly establishes that it was not intended that the execution of a new assignment would automatically trigger a new three-year lease term, as there would be no need for the option were this the case.

As reflected in an attachment to the Cotton affidavit, on June 16, 2000, Anwar and Meenaz Ali assigned their interest in the lease to Forrest E. and Nicole M. Hinkle (Hinkle), with the consent of JDN. The agreement did not extend the term of the lease, which was set to expire on February 28, 2001, but it did amend the rental rate.

As reflected in an attachment to the Cotton affidavit, on February 15, 2001, Hinkle then entered into an agreement with JDN which renewed the lease for an additional three-year term, covering the period March 1, 2001, through February 28, 2004, and amended the rental rate. The extended lease as of this time was to expire on February 28, 2004. If JDN's argument that it was intended that each new assignment automatically renewed the lease for a new three-year term, then the June 16, 2000 assignment would have extended the lease for three years, and there would have been no need on February 15, 2001, to execute an agreement specifically extending the lease through February 28, 2004.

As reflected in Exhibit A-2 to the Cotton affidavit, effective October 8, 2001, Hinkle assigned their interest in the lease to Fagbemi, with the consent of JDN. This agreement did not change the term of the lease, which was at this time set to expire on February 28, 2004.

As reflected in Exhibit A-3 to the Cotton affidavit, effective July 1, 2002, Fagbemi assigned their interest in the extended lease to Afuape, with the consent of JDN. As of this time, the extended lease was set to expire on February 28, 2004. Fagbemi contends that the lease had expired at the time it was assigned to them, and thus they had no liability thereunder. This argument is without merit based on the facts of this case.

2. JDN urges us to interpret the language of the assignment as establishing a new three-year term with each lease assignment, which would result in Fagbemi's liability for a three-year period beginning upon the date the lease was assigned to them. Indeed, the trial court erroneously awarded damages for just this period.

Given the clear language of the lease regarding written renewals of the lease, and the conduct of JDN in addressing assignments and renewals, which directly contradicts its argument, JDN's contention is without merit. As to the term for which the defendants are liable, the trial court erred in ruling that Fagbemi and Afuape are jointly and severally liable for rent for the three-year period from August 1, 2001 to July 31, 2004. Cotton's affidavit established that the defendants' failure to pay rentals began March 2003. The expiration date on the lease at the time Fagbemi was assigned same by Hinkle on August 1, 2001, was February 28, 2004. The assignment by Fagbemi to Afuape, effective July 1, 2002, did not extend the lease expiration date, which remained February 28, 2004. As the default did not begin until March 2003, the total lease period for which there is joint and several liability by Fagbemi and Afuape is March 2003 through February 28, 2004, as provided by the lease, renewal agreements, and assignment documents. JDN may be entitled to attorney fees and court costs under the terms of the lease, as determined by the trial court under the facts of this case. For the reasons outlined above, the default judgment is vacated and the summary judgment is affirmed as to the liability of each defendant and vacated as to damages, attorney fees, and court costs, and the case is remanded to the trial court for disposition consistent with this opinion.

*Judgment affirmed in part, vacated in part and case remanded with direction. Miller and Bernes, JJ., concur.*

DECIDED SEPTEMBER 21, 2005.

*Robert W. Hughes, Jr.*, for appellants.
*McManus & Smith, Ray S. Smith III*, for appellee.